1  ERIC P. ISRAEL (State Bar No. 132426)
   *eisrael@DanningGill.com*
2  SONIA SINGH (State Bar No. 311080)
   *ssingh@DanningGill.com*
3  DANNING, GILL, ISRAEL & KRASNOFF, LLP
   1901 Avenue of the Stars, Suite 450
4  Los Angeles, California 90067-6006
   Telephone: (310) 277-0077
5  Facsimile: (310) 277-5735

6  Attorneys for Brad D. Krasnoff, Chapter 7 Trustee

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                    **LOS ANGELES DIVISION**

11  In re                              Case No. 2:19-bk-13181-RK

12  SERAPIO VENEGAS,                   Chapter 7

13          Debtor.                    **TRUSTEE'S NOTICE OF OPPOSITION
                                       AND OPPOSITION TO MOTION OF
14                                     ALLIANCE UNITED INSURANCE
                                       COMPANY TO DISMISS BANKRUPTCY
15                                     CASE; MEMORANDUM OF POINTS
                                       AND AUTHORITIES, DECLARATION
16                                     OF BRAD D. KRASNOFF AND REQUEST
                                       FOR JUDICIAL NOTICE IN SUPPORT
17                                     THEREOF**

18                                     Date:    March 10, 2020
                                       Time:    2:30 p.m.
19                                     Place:   Courtroom 1675
                                                255 E. Temple Street
20                                              Los Angeles, California 90012

21  ─────────────────────────────

22          PLEASE TAKE NOTICE that Brad D. Krasnoff, the Chapter 7 trustee (the "Trustee") for

23  the estate of Serapio Venegas (the "Debtor"), hereby submits his opposition (the "Opposition") to

24  the "Cross-Motion" to Dismiss "Involuntary" Bankruptcy Case *(docket nos. 53, 54 and 55)* (the

25  "Motion to Dismiss") filed by Alliance United Insurance Company ("Alliance United") on or about

26  February 11, 2020.

27          The Trustee's Opposition is based on this Notice of Opposition and Opposition, the

28  accompanying Memorandum of Points and Authorities, Declaration of Brad D. Krasnoff and

1577763.2 1913181A                         1

1  Request for Judicial Notice and any and all other evidence submitted at or before the hearing on the

2  Motion to Dismiss.

3           PLEASE TAKE FURTHER NOTICE that, any reply must be in writing, filed with the

4  Clerk of the Bankruptcy Court and served upon counsel for the Trustee named in the upper left-

5  hand corner of this notice not less than seven (7) calendar days before the hearing on the Motion.

6

7  DATED:  February 25 , 2020          DANNING, GILL, ISRAEL & KRASNOFF, LLP

8

9                                            By:    /S/ ERIC P. ISRAEL

10                                                  ERIC P. ISRAEL
                                                    Attorneys for Brad D. Krasnoff, Chapter 7 Trustee
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................7

I.    INTRODUCTION .........................................................................................................7

II.   FACTUAL SUMMARY ...............................................................................................9

    A.    Bankruptcy Facts ...............................................................................................9

    B.    The State Court Litigation ................................................................................10

    C.    The Trustee's State Court Lawsuit and Alliance United's Removal..........................11

III. LEGAL DISCUSSION...................................................................................................11

    A.    Alliance United Does Not Have Standing to Seek Dismissal of the
        Bankruptcy Case ..............................................................................................11

    B.    Alliance United Has Not Met Its Burden to Establish Cause for Dismissal .............14

        1.    Dismissal of the Bankruptcy Case Would Result in Prejudice to
                Wood and the Estate Itself......................................................................15

        2.    The Second Circuit's Decision in *Murray* is Inapposite to the
                Bankruptcy Case ....................................................................................16

        3.    Special Counsel's Contingency Fee is Not Cause for Dismissal .................20

        4.    Administrative Claimants Would be Severely Prejudiced by a
                Dismissal.................................................................................................20

IV. CONCLUSION .........................................................................................................21

DECLARATION OF BRAD D. KRASNOFF ..............................................................22

REQUEST FOR JUDICIAL NOTICE.........................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Consumer Fin. Prot. Bureau v. Gordon*
    819 F.3d 1179 (9th Cir. 2016) ................................................... 11

*Deglin v. Keobapha (In re Keobapha)*
    279 B.R. 49 (Bankr. D. Conn. 2002) ...................................... 17

*Fondiller v. Robertson (In Matter of Fondiller)*
    707 F.2d 441 (9th Cir. 1983) .................................................... 12

*Gladstone Realtors v. Vill. of Bellwood*
    441 U.S. 91 (1979)...................................................................... 12

*Hollingsworth v. Perry*
    570 U.S. 693 (2013)..................................................................... 11

*In re Aiello*
    428 B.R. 296 (Bankr. E.D.N.Y. 2010) ............................ 12, 14, 21

*In re Asset Resolution Corp.*
    552 B.R. 856 (Bankr. D. Kan. 2016) ..................................... 15

*In re Campbellton-Graceville Hosp. Corp.*
    593 B.R. 663 (Bankr. N.D. Fla. 2018)................................. 13, 14

*In re E.S. Bankest, L.C.*
    321 B.R. 590 (Bankr. S.D. Fla. 2005) ............................... 13, 14

*In re Harkins*
    B.R. 414 (Bankr. E.D. Pa. 2009) ......................................... 19

*In re Hickman*
    384 B.R. 832 (B.A.P. 9th Cir. 2008) ................................. 14, 15

*In re Jr. Food Mart of Arkansas, Inc.*
    234 B.R. 420 (Bankr. E.D. Ark. 1999) ................................ 12

*In re Kaur*
    510 B.R. 281 (Bankr. E.D. Cal. 2014)................................ 15, 16

*In re Miller*
    347 B.R. 48 (Bankr. S.D. Tex. 2006) ..................................... 13

*In re Murray*
    543 B.R. 484 (Bankr. S.D.N.Y. 2016 ........................... passim

*In re Murray*
    900 F.3d 53 (2d Cir. 2018) ................................................. 16, 17

1

## TABLE OF AUTHORITIES
### (Continued)

2

Page

3    *In re Odin Demolition & Asset Recovery, LLC*
        544 B.R. 615 (Bankr. S.D. Tex. 2016) ................................................. 13

4

      *In re P.R.T.C., Inc.*

5        177 F.3d 774 (9th Cir. 1999) ............................................................ 12

6    *In re Plummer*
        No. 08–14522–SSM, 2008 WL 5786896, at *2 (Bankr. E.D. Va. 2006) ............ 19

7

      *In re Refco Inc.*

8        505 F.3d 109 (2d Cir. 2007) ............................................................ 12

9    *In re Sherman*
        491 F.3d 948 (9th Cir. 2006) ............................................................ 14

10

      *In re Smith*

11        507 F.3d 64 (2d Cir. 2007) ............................................................. 21

12   *In re Stairs*
        307 B.R. 698 (Bankr. D. Colo. 2004) ................................................... 15

13

      *In re Thornton*

14        No. 11-21007, 2012 WL 3013931, at *1 (Bankr. S.D. Ga. July 12, 2012) ......... 19

15   *In re Tower Park Properties, LLC*
        803 F.3d 450 (9th Cir. 2015) ............................................................ 12

16

      *In re Ventura*

17        375 B.R. 103 (Bankr. E.D.N.Y. 2007) .................................................. 14

18   *In re Xiong*
        No. 17-12681-J7, 2018 WL 1725572, at *5 (Bankr. D.N.M. Apr. 6, 2018) ......... 12

19

      *Leach v. United States (In re Leach)*

20        130 B.R. 855 (B.A.P. 9th Cir. 1991) .............................................. 14, 15

21   *Sierra Club v. Morton*
        405 U.S. 727 (1972) ....................................................................... 11

22

      *Sweeney*

23        275 B.R. 730 (Bankr. W.D. Pa. 2002) .................................................. 12

24   *The Robert and Joan Dennen Trust v. Dennen (In re Dennen)*
        539 B.R. 182 (Bankr. D. Colo. 2015) ................................................... 18

25

26   **STATUTES**

27   11 U.S.C. § 101(5) ................................................................................ 12

28   11 U.S.C. § 1109 .................................................................................. 13

# TABLE OF AUTHORITIES
### (Continued)

Page

11 U.S.C. § 707(a) .................................................................................................... passim

11 U.S.C. § 727 ............................................................................................................ 20

28 U.S.C. § 1452(b) ...................................................................................................... 11

**OTHER AUTHORITIES**

6 *Collier on Bankruptcy* ¶ 707.03[2]
    (Richard Levin & Henry J. Sommer eds., 16th ed.) ......................................... 17, 19

**RULES**

Fed. R. Bankr. P. 9027 .................................................................................................. 11

1577763.2  I913181A

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.

INTRODUCTION

The underlying "Cross-Motion to Dismiss Involuntary Bankruptcy Case" *(docket nos. 53, 54 and 55)* (the "Motion to Dismiss") is the latest attempt by Alliance United Insurance Company ("Alliance United") to derail Serapio Venegas's (the "Debtor") particularly valuable rights against Alliance United from ever being heard. After having been grievously injured by the Debtor in July 2015, and obtaining a judgment against the Debtor in the Los Angeles Superior Court in the amount of approximately $13 million – Stephen Wood ("Wood") filed the underlying involuntary petition against the Debtor for the express purpose of allowing the Debtor's particularly valuable rights against Alliance United to be tried. The Debtor has the right under California law to assign certain rights against his insurer, Alliance United, which are valuable because Alliance United let a settlement offer from Wood lapse without acceptance. To date, notwithstanding a jury trial and final ruling, the Debtor has steadfastly denied responsibility for the serious injuries and has refused to assign those bad faith rights to Wood, thereby necessitating the involuntary petition. To date, Alliance United has repeatedly tried to thwart those rights from being pursued against it. After Brad D. Krasnoff, the Chapter 7 trustee for the Debtor's estate (the "Trustee") commenced a civil action on behalf of the Debtor's estate against Alliance United in the Los Angeles Superior Court (the "State Court Action"), Alliance United removed the action to this Court, in which adversary proceeding the Trustee's motion to remand is pending. Presently, Alliance United has filed the Motion to Dismiss at bar in an attempt to eliminate Wood's arguably last chance to ever recover on his judgment.

As a threshold issue, Alliance United lacks the requisite standing to seek dismissal of the bankruptcy case – as a non-creditor, Alliance United will not receive any money from the estate regardless of how much the estate recovers. Indeed, Alliance United's only connection with the bankruptcy case is that it is the target of litigation. Alliance United's desire for a certain outcome in the State Court Action does not make it a party in interest with standing to request dismissal

1577763.2  1913181A                                7

1  under 11 U.S.C. § 707(a).  But even if that were not the fatal flaw, which it is, Alliance United has

2  not met its burden to identify cause for dismissal.

3          Although called a "cross-motion" – seemingly "cross" with respect to the motion to remand

4  in the adversary proceeding, a motion to dismiss the bankruptcy case is not a legitimate cross-

5  motion authorized under the Federal Rules of Bankruptcy Procedure.  No such cross-motion

6  procedure is authorized or appropriate.

7          In addition, Alliance United incorrectly throughout its Motion to Dismiss characterizes this

8  case as an "involuntary bankruptcy case."  While the case was indeed commenced as an

9  involuntary, since this order for relief was entered in April 2019 this is a full blown bankruptcy

10  case.

11          On the merits, the Motion to Dismiss fails to acknowledge that the major factor in a

12  dismissal consideration under § 707(a) is prejudice to creditors.  Here, dismissal of the bankruptcy

13  case would result in obvious prejudice to Wood, whose rights could be dissipated in the event of

14  dismissal, as well as the estate itself, including the Trustee and the Trustee's professionals who

15  have outstanding fees which are the result of efforts to administer the estate.  Moreover, Alliance

16  United's heavy reliance on the bankruptcy court's decision in *Murray* is irrelevant to the

17  underlying bankruptcy case.  Significantly, *Murray* was actually still in the involuntary stage.[1]

18  Here, again, an order for relief was entered 11 months ago.  The *Murray* court found that the

19  creditor's interests were sufficiently protected under state law – here, the Bankruptcy Case is

20  almost certainly the only vehicle for Wood to ever recover on the Debtor's rights against Alliance

21  United.  Additionally, the factors from the *Murray* decision cited to in the Motion to Dismiss do

22  not in fact support Alliance United's argument that dismissal of this bankruptcy case is appropriate.

23  The claims bar date is on May 26, 2020, so it is quite possible that there will be other creditors

24  here.  Even if ultimately there is only one creditor, there is no automatic requirement to dismiss the

25  case.  Moreover, that Wood may be the only creditor and the involuntary was filed as a "judgment

26

27  _____

[1]  *Murray*, 543 B.R. 484 (Bankr. S.D.N.Y. 2016) was affirmed by the district court and the Second
28  Circuit on the grounds that dismissal was not an abuse of discretion by the bankruptcy court.

1 | enforcement mechanism" were all known to the Court when it entered its order for relief, and have

2 | been the express aspects of the bankruptcy case from its inception.

3 |      The Motion to Dismiss must be rejected because Alliance United has no standing to seek

4 | dismissal.  In addition, to the extent the Court considers the Motion to Dismiss on the merits, the

5 | disputes raised by Alliance United do not support dismissal of the bankruptcy case.

6

7 | II.

8 | FACTUAL SUMMARY

9 | A.    Bankruptcy Facts

10 |      On or about March 22, 2019, an involuntary petition under Chapter 7 of title 11 of the

11 | United States Code (the "Bankruptcy Code") was filed against the Debtor by Wood, thereby

12 | commencing bankruptcy case no. 2:19-bk-13181-RK (the "Bankruptcy Case").  The order for relief

13 | was entered on or about April 30, 2019 *(docket no. 11)* (the "Order for Relief").  On or about May

14 | 10, 2019, Brad D. Krasnoff accepted appointment as the Chapter 7 trustee for the Debtor's estate

15 | and continues to serve in that capacity for the benefit of creditors.

16 |      On or about June 5, 2019, the Trustee filed his application to employ general bankruptcy

17 | counsel *(docket no. 18)*, which the Court approved in its order entered on or about July 2, 2019

18 | *(docket no. 34)*.  Thereafter, the Trustee filed his motion for an order authorizing him to prepare a

19 | list of creditors, schedules and statement of financial affairs on behalf of the Debtor *(docket no. 26)*,

20 | which the Court granted in its order entered on or about August 6, 2019 *(docket no. 32)*.  The

21 | Trustee filed the schedules, statements and lists to the best of his information and belief on behalf

22 | of the Debtor on or about February 7, 2020 *(docket no. 52)*.

23 |      The Trustee file his application to employ special litigation counsel on or about July 29,

24 | 2019 *(docket no. 29)*, which the Court approved in its order entered on or about August 23, 2019

25 | *(docket no. 36)*.

26

27

28

B.    The State Court Litigation

On July 18, 2015, Wood was grievously injured when the bicycle he was riding was struck by a vehicle driven by the Debtor. Wood suffered serious, permanent injuries as a result of being dragged underneath the truck for a quarter of a mile, including the loss of a finger and a portion of his left ear, which required extensive hospitalization and surgeries.

On February 3, 2016, Wood made a written demand to Alliance United for the payment of the policy limits subject to specific express terms and conditions. Alliance United failed to accept the settlement offer when it sent a release which it required Wood to execute that was inconsistent with the terms of the offer. After Alliance United failed to accept Wood's settlement offer, the Wood filed his personal injury action against the Debtor entitled *Stephen Wood v. Serapio Venegas*, Los Angeles Superior Court Case No. MC026431 (the "Personal Injury Action").

While the Personal Injury Action was pending, Alliance United filed a declaratory suit in California Superior Court against both its insured, the Debtor, and Wood (the "Declaratory Relief Action"). Alliance United sought findings from the California state court that it had accepted a settlement offer from Wood, that Alliance United was only obligated to pay its stated policy limits to Wood, and that Alliance United acted in good faith. After an adverse ruling from the California state court in the Declaratory Relief Action – finding as a matter of law that Alliance United had not accepted Wood's settlement offer, and that the matter had not settled – Alliance United unilaterally dismissed the Declaratory Relief Action.

Thereafter, the Personal Injury Action proceeded to trial and resulted in a verdict of $13,241,365, plus costs, in favor of Wood and against the Debtor. Wood advised that the Debtor had rights against his insurer, Alliance United. Specially, Alliance United let the settlement offer from Wood lapse without acceptance, thereby giving rise to claims against Alliance United for failure to defense, failure to settle and/or failure to indemnify the Debtor in the Stephen Wood Action. The Trustee is advised that despite Wood's efforts, the Debtor has refused to assign those rights.

C.    The Trustee's State Court Lawsuit and Alliance United's Removal

On or about September 27, 2019, the Trustee commenced a civil action on behalf of the Debtor's estate against Alliance United – the State Court Action.  On or about November 8, 2019, Alliance United filed a Notice of Removal pursuant to which it removed to this Court the State Court Action, which is currently pending before this Court as adversary proceeding case no. 2:19-ap-01481-RK (the "Adversary Proceeding").  Alliance United filed its answer in the Adversary Proceeding on or about November 15, 2019.  On or about December 9, 2019, the Trustee filed his Motion to Remand Adversary Proceeding Under 28 U.S.C. § 1452(b) and Federal Rule of Bankruptcy Procedure 9027 (the "Remand Motion").

On or about February 11, 2010, Alliance United filed a joint pleading entitled "Cross-Motion to Dismiss Involuntary Bankruptcy Case."  Although the Remand Motion was pending in the Adversary Proceeding, and motions to dismiss the bankruptcy case are to be filed in the main case, Alliance United filed one brief in an attempt to link the two.  As previously mentioned, the case is no longer an involuntary case either.  Regardless, the Motion to Dismiss should be denied.

### III.

### LEGAL DISCUSSION

A.    Alliance United Does Not Have Standing to Seek Dismissal of the Bankruptcy Case

Alliance United does not have the requisite standing to move for dismissal of the Bankruptcy Case.  Alliance is not a creditor of the estate.  Alliance United's only involvement is that it is the target of the Trustee's litigation.

Alliance United's clear desire for a certain outcome in the State Court Action is insufficient to confer the requisite standing.  A private party can bring a case and be heard only if it has standing – "a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1187 (9th Cir. 2016) (*citing Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)).  The determination of standing "depends upon whether the party has alleged … a personal stake in the outcome of the controversy…" *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972).

1  Most often, the party seeking to establish standing must demonstrate this "personal stake" by

2  showing that they "suffered some actual or threatened injury." *Gladstone Realtors v. Vill. of*

3  *Bellwood*, 441 U.S. 91, 99 (1979).  The Ninth Circuit has stated that to have standing in a

4  bankruptcy case, a party "must be a 'person aggrieved' by the bankruptcy court's order … in other

5  words, the order must diminish the [party's] property, increase its burdens, or detrimentally affect

6  its rights." *In re P.R.T.C., Inc.*, 177 F.3d 774, 777 (9th Cir. 1999) (*citing Fondiller v. Robertson (In*

7  *Matter of Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983)).

8         Creditors have standing to request dismissal of a debtor's Chapter 7 case "for cause" under

9  Bankruptcy Code Section 707(a).  *In re Xiong*, No. 17-12681-J7, 2018 WL 1725572, at *5 (Bankr.

10  D.N.M. Apr. 6, 2018); *see In re Aiello*, 428 B.R. 296 (Bankr. E.D.N.Y. 2010).  Here, Alliance

11  United does not have any creditor claims against the estate.[2]  Furthermore, while Section 707(a)

12  contains no language limiting who may file a motion to dismiss, such that a party in interest may

13  file and prosecute such motions, the concept of a "party in interest" is not so expansive as to

14  include Alliance United.  *See In re Jr. Food Mart of Arkansas, Inc.*, 234 B.R. 420, 421–22 (Bankr.

15  E.D. Ark. 1999).  The definition of a party in interest is not "infinitely expansive."  *In re Refco Inc.*,

16  505 F.3d 109, 118 (2d Cir. 2007) ("Bankruptcy courts are primarily courts of equity, but they are

17  not empowered to address any equitable claim tangentially related to the bankruptcy proceeding.

18  Bankruptcy court is a forum where creditors and debtors can settle their disputes *with each other*.

19  Any internal dispute between a creditor and that creditor's investors belongs elsewhere."); *see also*

20  *In re Tower Park Properties, LLC*, 803 F.3d 450, 457 (9th Cir. 2015) (an entity "that may suffer

21  collateral damage" but does not have a legally protected interest does not have standing to appear

22  and be heard on any issue in the bankruptcy case).

23         Even though as the defendant in the underlying State Court Action, Alliance United desires

24  a victory against the Trustee on the estate's claims, a desire for a certain outcome in an underlying

25  lawsuit does not transform Alliance United into a creditor with standing to seek dismissal of the

26  Bankruptcy Case.  *See In re Sweeney*, 275 B.R. 730, 733 (Bankr. W.D. Pa. 2002) (state court

27

28  [2] Pursuant to 11 U.S.C. § 101(5), a claim is a "right to payment."

defendants lacked standing to oppose chapter 7 trustee's motion to reopen the bankruptcy case and application to retain special counsel to prosecute suit; court stated that the fact that defendants were named parties in the state suit "does not thereby also make them parties-in-interest with respect to the instant bankruptcy case.  Because said entities lack any other relation to the instant bankruptcy case, they thus are not parties-in-interest with respect to the same, which means that they lack standing to participate in matters that deal solely with the administration of such case…"); *see also In re E.S. Bankest, L.C.*, 321 B.R. 590 (Bankr. S.D. Fla. 2005) (after analyzing standing and party in interest status for purposes of Section 1109 of the Bankruptcy Code, bankruptcy court held that a party sued by the representative of a chapter 11 debtor's estate did not have standing to pursue a motion to convert the case to chapter 7); *In re Campbellton-Graceville Hosp. Corp.*, 593 B.R. 663, 670 (Bankr. N.D. Fla. 2018) (entity that was potential target of future litigation by debtor-hospital did not have standing to prosecute motion to dismiss debtor's case; its motion to dismiss appeared to be an "attempt to use the Bankruptcy Code as a shield against potential liability and to obtain a litigation or negotiation advantage"); *In re Odin Demolition & Asset Recovery, LLC*, 544 B.R. 615, 625 (Bankr. S.D. Tex. 2016) (*citing In re Miller*, 347 B.R. 48, 52 (Bankr. S.D. Tex. 2006)) ("Merck's only relationship to this case is that the Trustee asserts that Merck should pay money to the estate ... [g]iving Merck a voice in whether the chapter 7 trustee can sue Merck is a very strange idea, a little like putting the fox in charge of the hen house ... Merck is not a party in interest merely on showing that the Trustee will sue Merck.").

Here, Alliance United, like the entities in *Bankest* and *Campbellton-Graceville*, has never filed a claim and has no interest in the outcome of the Bankruptcy Case.  The bankruptcy court in *Bankest* found that the law firm's motion to convert was nothing but "a litigation tactic to delay and hinder prosecution of the [case against it] with the ultimate goal to reduce the estate's recovery in connection therewith." *Bankest*, 321 B.R. at 596.  Similarly here, Alliance United's goal is identical to that of the law firm defendant in *Bankest* and the entity facing litigation in *Campbellton-Graceville* – to reduce or eliminate the Trustee's chances of a successful recovery against it. *Campbellton-Graceville Hosp. Corp.*, 593 B.R. at 668.  Alliance United's interest in protecting itself from potential liability is "antithetical to the interests of the legitimate creditors of

the Debtor who have a direct interest in maximizing any recovery from [them]." *Id.* at 670 (*citing Bankest*, 321 B.R. at 598). In sum, Alliance United is not a creditor of the bankruptcy estate, and cannot interfere with the Trustee's business judgment in administering assets of the estate just because it is the target in an underlying lawsuit. Consequently, Alliance United's Motion to Dismiss should be denied for lack of standing.

B.    Alliance United Has Not Met Its Burden to Establish Cause for Dismissal

Bankruptcy Code Section 707(a) provides that "the court may dismiss a case under this chapter only after notice and a hearing and only for cause." To the extent that the Court considers the Motion to Dismiss, Alliance United has failed to meet its burden of proving cause by a preponderance of the evidence. *Aiello*, 428 B.R. at 299 (*citing In re Ventura*, 375 B.R. 103, 108 (Bankr. E.D.N.Y. 2007) ("The party moving for dismissal under Section 707(a) bears the burden of proving cause by a preponderance of the evidence.")

Alliance United posits that "improper use of the bankruptcy process" constitutes cause for dismissal under Bankruptcy Code Section 707(a).[3] As Alliance United admits in its Motion to Dismiss, there is no specific Bankruptcy Code provision addressing its asserted cause.[4] "If there is no specific Bankruptcy Code provision that addresses the asserted 'cause,' the question becomes whether the totality of circumstances amount to § 707(a) 'cause.'" *In re Hickman*, 384 B.R. 832, 840 (B.A.P. 9th Cir. 2008) (*citing In re Sherman,* 491 F.3d 948, 970 (9th Cir. 2006); *Leach v. United States (In re Leach),* 130 B.R. 855, 856 (B.A.P. 9th Cir. 1991)). Here, Alliance United cannot prove that the totality of the circumstances amount to § 707(a) cause to dismiss the Bankruptcy Case.

---

[3] Motion to Dismiss, p. 11.

[4] Motion to Dismiss, p. 11.

1      1.    Dismissal of the Bankruptcy Case Would Result in Prejudice to Wood and the

2    Estate Itself

3          "Prejudice" is the major factor in the totality of circumstances analysis under Bankruptcy

4    Code Section 707(a). *See Hickman*, 384 B.R. at 841; *In re Stairs*, 307 B.R. 698, 703 (Bankr. D.

5    Colo. 2004) ("the predominant view, at a minimum, requires that dismissal not cause prejudice to

6    the creditors"); *In re Asset Resolution Corp.*, 552 B.R. 856, 862 (Bankr. D. Kan. 2016) ("Cause is

7    not defined under the Code, but courts considering dismissal agree that cause minimally requires a

8    debtor's creditors not be prejudiced.")  The question of prejudice resulting from dismissal may be

9    evaluated using both legal and equitable considerations. *Hickman*, 384 B.R. at 840 (*citing In re*

10   *Leach*, 130 B.R. 855, 856 (B.A.P. 9th Cir. 1991)).  Alliance United, as the moving party, bears the

11   burden of showing that there would be "no legal prejudice resulting from the dismissal." *Hickman*,

12   384 B.R. at 841.

13         Here, the Motion to Dismiss completely fails to acknowledge that dismissal of the

14   Bankruptcy Case would mean that claims on behalf of the Debtor against Alliance United would

15   dissipate – clearly harming Wood.  Wood was grievously injured by the Debtor, and now the

16   Debtor has failed to cooperate with the Bankruptcy Case.  The involuntary petition was filed by

17   Wood for the express purpose of pursuing the Debtor's rights against Alliance United for letting a

18   setting a settlement offer lapse without acceptance.  The Debtor has refused to pursue those rights

19   himself, or to assign those rights.  Accordingly, if the Bankruptcy Case were to be dismissed, such

20   rights would no longer exist, thereby depriving Wood the ability for its judgment to ever be paid.

21         Further, Alliance United cannot prove that dismissal of the Bankruptcy Case would not

22   harm the estate itself, including administrative claimants. *See In re Asset Resolution Corp.*, 552

23   B.R. 856, 863 (Bankr. D. Kan. 2016); *see also In re Kaur*, 510 B.R. 281, 286 (Bankr. E.D. Cal.

24   2014) ("the inquiry under § 707(a) requires the court to consider the prejudice to *all* parties in

25   interest, not just one creditor constituency… the [movant] cannot show that administrative

26   claimants and the estate would not be prejudiced by an outright dismissal").  Here, administrative

27   claimants of the Debtor's estate – including the Trustee and the Trustee's professionals -- would

28   clearly suffer prejudice if the event of dismissal because dismissal of the Bankruptcy Case will

1  "necessarily terminate their ability to get paid for rendering services to the estate." *Kaur*, 510 B.R.

2  at 286. The Trustee and the Trustee's professionals, as administrative claimants, have outstanding

3  fees which are the result of reasonable and diligent efforts to administer the estate. The State Court

4  Action remains a possible source of payment, and dismissing the Bankruptcy Case would put an

5  end to any opportunity the Trustee may have to pay the administrative expenses.

6       Thus, based on the evident prejudice that would result to Wood and the Debtor's estate

7  itself from dismissal of the Bankruptcy Case, the Motion to Dismiss should be denied.

8       2.    The Second Circuit's Decision in *Murray* is Inapposite to the Bankruptcy Case

9       Alliance United's heavy reliance on the bankruptcy court's decision in *Murray* is entirely

10  misplaced. There are key differences in the underlying Motion to Dismiss and the facts and

11  circumstances in *Murray*. Most notably, in *Murray* the debtor challenged the involuntary petition

12  and the entry of an order for relief. *Murray*, 543 B.R. at 485. Here, instead it is a non-debtor and

13  non-creditor seeking to dismiss the case, where the Order for Relief has already been entered.

14  Indeed, the target of the Trustee's litigation is seeking to dismiss the case. Equally important,

15  Alliance United waited many months to bring the Motion to Dismiss – indeed the hearing will be

16  eleven months after the Order for Relief.

17       Moreover, in affirming the bankruptcy court's dismissal, the Second Circuit "focus[ed]

18  particularly" on the fact that no substantial prejudice would result from the dismissal because the

19  creditor had adequate remedies to enforce its judgment under state law:

20       At the outset, the following factors favor dismissal in this case: [the creditor who filed the
   involuntary] is a sole creditor; judgment enforcement remedies exist under state law; and no

21       assets would be lost or dissipated in the event the bankruptcy case does not continue.

22  *In re Murray*, 900 F.3d 53, 59-61 (2d Cir. 2018).

23       The Second Circuit specifically found that the bankruptcy court did not abuse its discretion

24  in dismissing the case because "the judgment enforcement remedies under New York law

25  sufficiently protect [the creditor]'s interests as a sole creditor." *Id.* at 59.

26       Here, as noted above, Wood would be completely deprived of the ability to ever collect on

27  its judgment against Alliance United in the event of dismissal. Unlike the creditor in *Murray*, here,

28  the Bankruptcy Case is the only way for Wood to assert the Debtor's rights against Alliance

1    United. Not only are Wood's judgment enforcement remedies under state law not "sufficient" to

2    protect its interests – they are wholly non-existent. In sum, in the event of dismissal, the rights

3    against Alliance United would be lost and dissipated. Therefore, *Murray* on its face cannot support

4    dismissal of the underlying Bankruptcy Case. Moreover, it is not in the best interest of the

5    administrative claimants to dismiss the case.

6          Additionally, although Alliance United posits that "[a]s in *Murray*, every single factor

7    points toward dismissal"[5] – as detailed below, that is completely untrue. The factors enumerated

8    by the bankruptcy court and approved by the Second Circuit in *Murray* do no support dismissal

9    here:

10          ***First***, despite Alliance United's claim that "this is unquestionably a two-party dispute,"[6]

11    two party disputes typically involve disputes between the debtor and a creditor. That is not the case

12    here. Instead, this is a dispute between the Debtor and the target of the bad faith claims – Alliance

13    United. Indeed, the Bankruptcy Case is arguably a three-party dispute involving the Trustee on

14    behalf of the estate's interests, the Debtor and Alliance United. Furthermore, in response to

15    argument in the Motion to Dismiss that involuntary cases built on two-party disputes should be

16    dismissed[7] – "the fact that there is only one significant creditor, so that the bankruptcy case is

17    essentially a two-party dispute is not, by itself, cause for dismissal." 6 *Collier on Bankruptcy* ¶

18    707.03[2] (Richard Levin & Henry J. Sommer eds., 16th ed.) (*citing Deglin v. Keobapha (In re*

19    *Keobapha)*, 279 B.R. 49 (Bankr. D. Conn. 2002)). In the event that courts find a bankruptcy case

20    to constitute a two-party dispute, it is only a single factor in the analysis for dismissal, which

21    analysis favors whether or not the potential for prejudice exists for creditors and other interested

22    parties in dismissal. "The existence of a two-party dispute does not, by itself, warrant dismissal of

23    a case where there are other legitimate bankruptcy objectives to achieve." *In re Murray*, 543 B.R.

24    at 493; *see The Robert and Joan Dennen Trust v. Dennen (In re Dennen)*, 539 B.R. 182, 187

25

---

26   [5] Motion to Dismiss, p. 13.

27   [6] Motion to Dismiss, p. 13.

28   [7] Motion to Dismiss, p. 13.

(Bankr. D. Colo. 2015) ("The interests of creditors or other interested parties will not be affected by completion of the parties' dispute in the state court.... The dispute between the Trust and the Debtor is strictly a two-party dispute. There is no evidence before the Court of any potential for prejudice with respect to the interests of creditors or other interested parties in the bankruptcy case. That lack of prejudice to the interests of creditors and others weighs in favor of granting relief."). Here, given the clear prejudice to Wood and the estate itself inherent in dismissal, the fact that Bankruptcy Case could be perceived as a two-party dispute does not support dismissal.

*Second, Third and Fourth,* in response to the assertions that the case has been brought "solely as a judgment enforcement mechanism," there are no competing creditors and there is no need for *pari passu* distribution because there is only a single creditor[8] -- all of this has been presented to the Court, which entered the Order for Relief. It is no secret that Bankruptcy Case was filed as a last resort on behalf of Wood based on the Debtor's unwillingness to cooperate in the legal process or to assign its rights against Alliance United. It is unknown at this time whether the Debtor has other creditors, as the claims bar date has not passed yet. All of these facts have been shown to the Court and interested parties several times – including in the Unilateral Status Report of Petitioning Creditor *(docket no. 9)*. In consideration of these circumstances, including that the exact purpose of the involuntary was to assert the Debtor's valuable rights against Alliance United, the Court entered the Order for Relief.

*Fifth,* the fact that there are no avoidable transfers that would call for the exercise of the Trustee's avoidance powers is a red herring. In *Murray*, the bankruptcy court pointed out that if the subject transfers at issue were fraudulent, they could be avoided under state law without the need to file a bankruptcy action. *In re Murray*, 543 B.R. at 487. The fact that there was another forum to avoid the transfers, the bankruptcy case did not need to remain open for the transfers to be pursued. Here, there are no subject avoidable transfers to consider, thereby making this factor irrelevant to the dismissal analysis.

---

[8] Motion to Dismiss, p. 14-15.

1   Looked at another way, actually, preserving avoiding power claims that would not exist

2   absent the bankruptcy case was clearly a factor the *Murray* court considered. Thus, preserving

3   assets that might not otherwise be available outside of bankruptcy was an important consideration.

4   Here, the assignment of the bad faith insurance claims that occurred automatically as a result of the

5   bankruptcy filing would be undone. Thus, the Trustee submits that this factor actually supports

6   denying dismissal of the case.

7   *Sixth and Seventh,* despite Alliance United's arguments, there is clearly a showing of a

8   lack of "adequate remedies" under non-bankruptcy law. As discussed in detail above, as a practical

9   matter if the Bankruptcy Case were dismissed, the rights against Alliance United likely could no

10  longer be pursued. In *Murray*, the creditor was found to be using the bankruptcy as a "judgment

11  enforcement device... to secure a debt collection remedy that is <u>more potent</u> in bankruptcy than the

12  equivalent right under nonbankruptcy law." *In re Murray*, 543 B.R. at 498 (emphasis added). That

13  is not the situation here. Without the Bankruptcy Case, there is no other equivalent right under

14  nonbankruptcy law.

15  *Eighth*, it is clear that the underlying asset – the rights against Alliance United – will be lost

16  and dissipated in the event of dismissal.

17  *Ninth*, the Bankruptcy Case should not be dismissed because the Debtor does not want or

18  need a bankruptcy discharge. "The fact that a debtor is ineligible for a discharge is not cause for

19  dismissal, because there are other purposes that may be served by a bankruptcy besides a discharge,

20  such as ... recovering assets for creditors." 6 *Collier on Bankruptcy* ¶ 707.03[2] (Richard Levin &

21  Henry J. Sommer eds., 16th ed.) (*citing In re Thornton*, No. 11-21007, 2012 WL 3013931, at *1

22  (Bankr. S.D. Ga. July 12, 2012)); *In re Harkins*, 445 B.R. 414 (Bankr. E.D. Pa. 2009) (stating that

23  ineligibility for discharge did not constitute cause for dismissal without a showing that the case was

24  filed in bad faith); *In re Plummer*, No. 08–14522–SSM, 2008 WL 5786896, at *2 (Bankr. E.D. Va.

25  2006) ("Nothing in the structure of the Code or Rules requires that a case be dismissed simply

26  because a debtor is not entitled to a discharge."). Thus, the fact that the Debtor will not receive a

27  discharge in the Bankruptcy Case is not cause for dismissal. Moreover, it would appear that

28

1577763.2 1913181A                                    19

1  Wood's claims will be discharged here, as Wood did not timely file a complaint under section 523

2  to determine his debts to be non-dischargeable.

3      In sum, the factors supporting the bankruptcy court's conclusion that the petition should be

4  dismissed in *Murray*, and affirmed by the Second Circuit, are not present here.

5      3.    Special Counsel's Contingency Fee is Not Cause for Dismissal

6      Finally, the Motion to Dismiss raises the implication several times that the Bankruptcy Case

7  should be dismissed because the "vast bulk" of any recovery in the State Court Action will be

8  distributed to the Trustee's special counsel and administrative claimants.[9] However, the Trustee's

9  special counsel is only receiving its 40% contingency fee once – not twice.  Alliance United failed

10 to object to the Trustee's application to employ, which contained the terms of employment, and in

11 fact the application was approved by the Court six months ago.  Special counsel has acknowledged

12 that the intention was to only receive one 40% contingency fee.  The fact that special counsel

13 would be entitled to reasonable fees and costs does not alter the fact that Alliance United has not

14 met its burden to prove that the totality of the circumstances establish the requisite "cause" for

15 dismissal.

16     4.    Administrative Claimants Would be Severely Prejudiced by a Dismissal

17     Alliance United filed an NEF in this case on June 11, 2019 – 9 months ago.  Since that time,

18 the Trustee and his professionals have taken various actions in good faith to administer this estate

19 and generate funds to pay creditors.  Those actions include retaining general and special counsel,

20 filing a motion which was granted extending the deadline to deny the Debtor's discharge and

21 authorizing the Trustee to file schedules and statement of finance affairs, further extending the 11

22 U.S.C. § 727 deadline, and commencing the Adversary Proceeding.  Alliance United waited nine

23 months before seeking to dismiss the Bankruptcy Case – clearly timed as a litigation tactic as a so-

24 called "cross-motion" to the Trustee's motion to remand the Adversary Proceeding.  Such

25 gamesmanship should not be rewarded.

26

27

---
28 [9] Motion to Dismiss, p. 2, 15.

1577763.2 1913181A                         20

IV.

<u>CONCLUSION</u>

For the reasons set forth herein, the Motion to Dismiss must be denied.  As a threshold and dispositive issue, Alliance United lacks standing.  Alliance United is not a creditor of the estate – it is merely the litigation target of the Trustee's lawsuit.  Regardless of how much the estate recovers in the State Court Action, Alliance United will have no right to payment from the estate.  The Motion to Dismiss should therefore be overruled in its entirety.

On the merits, Alliance United has failed to meet its burden to demonstrate cause for dismissal under 11 U.S.C. § 707(a).  The bankruptcy court "exercises substantial discretion in determining a motion to dismiss under Section 707(a)." *In re Aiello*, 428 B.R. at 299 (*citing In re Smith*, 507 F.3d 64 (2d Cir. 2007)).  Here, the Court should not exercise its discretion to dismiss the Bankruptcy Case because prejudice to Wood and the estate itself is evident in the event of dismissal.  Dismissal of the Bankruptcy Case would mean that claims on behalf of the Debtor against Alliance United would dissipate, thereby eliminating Wood's chance to ever collect on its judgment and ending the opportunity for the Trustee and the Trustee's professionals to ever be paid their outstanding administrative fees and expenses.  Furthermore, the factors cited in the bankruptcy court's decision in *Murray* do not weigh in the way Alliance United suggested.  There are key differences in the present set of facts and circumstances – including that the order for relief has already been entered by the Court.

Based on the foregoing, the Trustee respectfully requests that the Court deny the Motion and for all other just and proper relief.

DATED: February 25 , 2020          DANNING, GILL, ISRAEL & KRASNOFF, LLP


By:      /S/ ERIC P. ISRAEL
         ERIC P. ISRAEL
         Attorneys for Brad D. Krasnoff, Chapter 7 Trustee

1577763.2  1913181A                    21

# DECLARATION OF

# BRAD D. KRASNOFF

## DECLARATION OF BRAD D. KRASNOFF

I, Brad D. Krasnoff, declare as follows:

1.    I am the Chapter 7 trustee for the estate of Serapio Venegas (the "Debtor").

2.    This declaration is made in support of my opposition to the Cross-Motion to Dismiss Involuntary Bankruptcy Case *(docket nos. 53, 54 and 55)* (the "Motion to Dismiss") filed by Alliance United Insurance Company ("Alliance United").

3.    I have personal knowledge of the facts in this declaration, except those matters that are based upon information and belief, and as to such matters, I believe such matters are true. If called as a witness, I could testify competently to these facts.

4.    I am informed through my special litigation counsel in the underlying bankruptcy case that on July 18, 2015, Stephen Wood ("Wood") was grievously injured when the bicycle he was riding was struck by a vehicle driven by the Debtor. I am further informed that Wood suffered serious, permanent injuries as a result of being dragged underneath the truck for a quarter of a mile, including the loss of a finger and a portion of his left ear, which required extensive hospitalization and surgeries.

5.    I am informed through my special litigation counsel that on February 3, 2016, Wood made a written demand to Alliance United for the payment of the policy limits subject to specific express terms and conditions. Alliance United failed to accept the settlement offer when it sent a release which it required Wood to execute that was inconsistent with the terms of the offer. I am further informed that after Alliance United failed to accept Wood's settlement offer, Wood filed his personal injury action against the Debtor entitled *Stephen Wood v. Serapio Venegas*, Los Angeles Superior Court Case No. MC026431 (the "Personal Injury Action").

6.    I am informed through my special litigation counsel that while the Personal Injury Action was pending, Alliance United filed a declaratory suit in California Superior Court against both its insured, the Debtor, and Wood (the "Declaratory Relief Action"). Alliance United sought findings from the California state court that it had accepted a settlement offer from Wood, that Alliance United was only obligated to pay its stated policy limits to Wood, and that Alliance United acted in good faith. I am further informed that after an adverse ruling from the California

1  state court in the Declaratory Relief Action – finding as a matter of law that Alliance United had

2  not accepted Wood's settlement offer, and that the matter had not settled – Alliance United

3  unilaterally dismissed the Declaratory Relief Action.

4          7.      I am informed through my special litigation counsel that the Personal Injury Action

5  proceeded to trial and resulted in a verdict of $13,241,365, plus costs, in favor of Wood and against

6  the Debtor.  Wood has advised that the Debtor had rights against his insurer, Alliance United.

7          8.      I am informed through my special litigation counsel that Alliance United let the

8  settlement offer from Wood lapse without acceptance, thereby giving rise to claims against

9  Alliance United for failure to defense, failure to settle and/or failure to indemnify the Debtor in the

10 Personal Injury Action.  I am advised that despite Wood's efforts, the Debtor has refused to assign

11 those rights, thereby necessitating this bankruptcy case.

12         9.      I am further advised that in the event of dismissal of the Bankruptcy Case, Wood's

13 ability to enforce the rights against Alliance United would dissipate.

14         10.     To date, the Debtor has failed to cooperate in his Bankruptcy Case, including the

15 failure to file schedules.

16         11.     Based on reasonable and diligent efforts to administer the estate to date, there are

17 outstanding fees and expenses on behalf of myself and my professionals.

18         12.     Presently, there are no avoidable transfers in the Bankruptcy Case I am aware of.

19         13.     Based on my review of the pleadings filed in the Bankruptcy Case, Wood has not

20 timely filed a complaint under 11 U.S.C. § 523.

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

1577763.2  1913181A                         23

1    14.    Special litigation counsel has acknowledged that its intention was to only receive

2  one 40% contingency fee pursuant to its employment.

3

4    I declare under penalty of perjury under the laws of the United States of America that the

5  foregoing is true and correct.

6    Executed on February 25, 2020, at Los Angeles, California.

7

8

9

10    /Brad D. Krasnoff

# REQUEST FOR JUDICIAL NOTICE

## REQUEST FOR JUDICIAL NOTICE

Brad D. Krasnoff, the Chapter 7 trustee (the "Trustee") for the estate of Serapio Venegas (the "Debtor"), hereby respectfully requests that the Court take judicial notice of the following facts:

1.    On or about March 22, 2019, an involuntary petition under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") was filed against the Debtor by petitioning creditor Stephen Wood ("Wood"), thereby commencing bankruptcy case no. 2:19-bk-13181-RK (the "Bankruptcy Case").

2.    Wood filed his Unilateral Status Report in the Bankruptcy Case on or about April 30, 2019 *(docket no. 9)*.

3.    The order for relief was entered in the Bankruptcy Case on or about April 30, 2019 *(docket no. 11)*.

4.    On or about May 10, 2019, Brad D. Krasnoff accepted appointment as the Chapter 7 trustee for the Debtor's estate and continues to serve in that capacity for the benefit of creditors.

5.    On or about June 5, 2019, the Trustee filed his application to employ general bankruptcy counsel *(docket no. 18)*, which the Court approved in its order entered on or about July 2, 2019 *(docket no. 34)*.

6.    Counsel for Alliance United Insurance Company ("Alliance United") filed a Notice of Appearance and Request for Notice in the Bankruptcy Case on or about June 11, 2019 *(docket no. 19)*.

7.    On or about July 8, 2019, the Trustee filed his motion for an order authorizing him to prepare a list of creditors, schedules and statement of financial affairs on behalf of the Debtor, and extending the time to file a complaint objecting to the Debtor's discharge *(docket no. 26)*, which the Court granted in its order entered on or about August 6, 2019 *(docket no. 32)*.

8.    The Trustee file his application to employ special litigation counsel on or about July 29, 2019 *(docket no. 29)*, which the Court approved in its order entered on or about August 23, 2019 *(docket no. 36)*.

9.    The Trustee filed the schedules, statements and lists to the best of his information and believe on behalf of the Debtor on or about February 7, 2020 *(docket no. 52)*.

10.    On or about September 27, 2019, the Trustee commenced a civil action on behalf of the Debtor's estate against Alliance United in the Los Angeles Superior Court (the "State Court Action").

11.    On or about November 8, 2019, Alliance United filed a Notice of Removal pursuant to which it removed to this Court the State Court Action, which is currently pending before this Court as adversary proceeding case no. 2:19-ap-01481-RK (the "Adversary Proceeding").

12.    Alliance United filed its answer in the Adversary Proceeding on or about November 15, 2019.

13.    On or about December 9, 2019, the Trustee filed his Motion to Remand Adversary Proceeding Under 28 U.S.C. § 1452(b) and Federal Rule of Bankruptcy Procedure 9027 in the Adversary Proceeding.

14.    On or about February 11, 2010, Alliance United filed a joint pleading entitled "Cross-Motion to Dismiss Involuntary Bankruptcy Case" *(docket nos. 53, 54 and 55)*.

15.    On or about February 20, 2020, the Trustee filed his Notice of Assets, requesting a claims bar date *(docket no. 61)*.  The deadline to file claims in the Bankruptcy Case is May 26, 2020.

DATED: February 25, 2020           DANNING, GILL, ISRAEL & KRASNOFF, LLP


                                   By:      /S/ ERIC P. ISRAEL
                                         ERIC P. ISRAEL
                                         Attorneys for Brad D. Krasnoff, Chapter 7 Trustee

1577763.2  1913181A                        26

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*):  TRUSTEE'S NOTICE OF OPPOSITION AND OPPOSITION TO MOTION OF ALLIANCE UNITED INSURANCE COMPANY TO DISMISS BANKRUPTCY CASE; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATION OF BRAD D. KRASNOFF AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 25, 2020 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) February 25, 2020 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 25, 2020 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

PERSONAL DELIVERY ALSSI – TO BE DELIVERED 2/26/20
The Honorable Robert Kwan
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street
Bin outside of Suite 1682
Los Angeles, CA 90012

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 25, 2020 | Gloria Ramos | /S/ GLORIA RAMOS |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                    **F 9013-3.1.PROOF.SERVICE**

ADDITIONAL SERVICE INFORMATION (if needed):

## 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

- **Bernard D Bollinger**    bbollinger@buchalter.com,
  IFS_filing@buchalter.com;smartin@buchalter.com

- **Eric P Israel**    eisrael@DanningGill.com,
  danninggill@gmail.com;eisrael@ecf.inforuptcy.com

- **Brad D Krasnoff (TR)**    BDKTrustee@DanningGill.com,
  bkrasnoff@ecf.axosfs.com;DanningGill@gmail.com

- **Robert J Pfister**    rpfister@ktbslaw.com

- **Sonia Singh**    ssingh@DanningGill.com,
  danninggill@gmail.com,ssingh@ecf.inforuptcy.com

- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

## 2. SERVED BY U.S. MAIL

**Debtor**
**Serapio Venegas**
1612 E Lancaster Blvd
Lancaster, CA 93535

**Kristin Hobbs**
Shernoff Bidart Echeverria LLP
600 South Indian Hill Blvd
Claremont, CA 91711

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                              **F 9013-3.1.PROOF.SERVICE**